**In re Frank Jeffrey
MIDDLETON, Debtor.**

**Gary L. WHITSON, Jr., and Gary L.
Whitson, Sr., Plaintiffs,**

v.

**Frank Jeffrey MIDDLETON, Defendant.**

**Bankruptcy No. 87–03630–NT.
Adv. Pro. No. 88–0313–NT.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Dec. 30, 1988.

**815**

Bruce A. Wilcox, Tavss and Fletcher, P.C., Norfolk, Va., for creditors.

Charles M. Marcus, Marcus, Santoro & Kozak, Portsmouth, Va., for debtor.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

### Introduction

The plaintiffs, Gary L. Whitson, Jr., and Gary L. Whitson, Sr., filed a complaint under Bankruptcy Code Section 523(a)(9) to determine the dischargeability of separate indebtedness to them which is represented by a default state court judgment. The Court conducted a trial on this complaint and at the conclusion of trial took the matter under advisement. It is the ruling of the Court that the judgment debt is excepted from discharge under 11 U.S.C. § 523(a)(9). The following findings of fact and conclusions of law are provided as required by Bankruptcy Rule 7052.

### Findings of Fact

The debts involved in this adversary proceeding revolve around a tragic automobile accident that occurred in the early morning of December 9, 1985. On the preceding morning the debtor, Frank Jeffrey Middleton, went to work at the Newport News Shipbuilding and Drydock Company where he had recently begun a new job.

He left work at 7:00 p.m. after completing a twelve hour day. In an effort to get acquainted with some of his new coworkers he talked to some of them in the parking lot of the shipyard until about 9:00 p.m. At that time it was decided that they should all meet at a coworker's home in Portsmouth. After Middleton left the shipyard he stopped and had something to eat and then drove to the coworker's house in Portsmouth, arriving there about 10:00 p.m. Middleton admitted in testimony at the trial that he consumed two beers at the coworker's house where others were gathered.

Middleton left the Portsmouth gathering at 12:30 a.m. on December 9, 1985. He took Route 44 and turned onto westbound Interstate 64. In the same vicinity and at the same time, Gary L. Whitson, Jr., was riding his motorcycle westbound on I-64. Middleton attempted a lane change while on westbound I-64; however, his vehicle struck a barrier, went out of control and collided with Whitson's vehicle.

Shortly afterward, Virginia State Trooper David R. Copley arrived at the scene to investigate and report on the accident. Trooper Copley observed that Middleton was unsteady as he was standing; his feet were wide apart. He also observed that Middleton's eyes were extremely bloodshot and glassy, his speech was slow, cautious and slurred, and he had an extremely strong odor of alcohol about his person. Middleton told the trooper at the scene that he had three beers earlier and that he had fallen asleep at the wheel. Copley's official report of the accident indicated that Middleton was "drinking—obviously drunk".

When Trooper Copley arrived at the scene of the accident, he asked Middleton if he wanted medical treatment, and Middleton at first refused. But later, when Mr. Copley prepared to administer a breathalyzer test for the presence of alcohol, Middleton requested that he be taken to the hospital instead. This request was complied with, and consequently no blood alcohol or breath tests were administered. Middleton was not charged with driving under the influence of alcohol but was charged with reckless driving.

In the accident Middleton struck his head against the windshield and steering wheel; he suffered a laceration to the face and was treated for head injuries at Norfolk General Hospital where he remained for one or two hours before being released. Gary Whitson, Jr., lost his leg as a result of the accident.

Middleton was charged with and found guilty of reckless driving in the Circuit Court of the City of Norfolk, Virginia, on June 27, 1986. On December 10, 1986, Gary Whitson, Jr., sued debtor for the injuries he sustained while his father sued for medical damages. A default judgment was entered on March 20, 1987, in the Circuit Court of the City of Norfolk, Virginia, in favor of Gary L. Whitson, Jr., and Gary Whitson, Sr., against Frank Jeffrey Middleton. Gary L. Whitson, Jr., was awarded damages of $700,000.00, and Gary Whitson, Sr., was awarded $33,270.00.

### Conclusions of Law

■ This proceeding is governed by Section 523(a)(9) of the Bankruptcy Code which provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(9) to any entity, to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred.

11 U.S.C. § 523(a)(9) (1982 & Supp. IV 1986). In order to prevail, the plaintiff must prove the elements of Section 523(a)(9) which are: (1) that the debt arose from a judgment or decree entered in a court of record as a result of the debtor's operation of a motor vehicle; and (2) that the debtor operated the motor vehicle while legally intoxicated under the laws of the state in which the motor vehicle was operated.

In the law suit filed against the debtor in Norfolk Circuit Court, plaintiffs alleged that Middleton negligently allowed his vehicle to run into Gary Whitson, Jr.'s, motorcycle, and as a proximate cause Whitson suffered pain and disability. The facts of this collision were not contested either in the Circuit Court which rendered default judgment against debtor or in the instant dischargeability trial. Therefore, this Court concludes that debtor's liability to the Whitsons was incurred as a result of the debtor's operation of a motor vehicle on December 9, 1985.

The remaining and principal question then is whether under Virginia law the debtor was intoxicated at the time of the accident.

Middleton argues that there was no evidence in the suit on which the judgment was based indicating he was legally intoxicated. He contends that plaintiff's motion for judgment sought damages for defendant's negligent operation of a motor vehicle and that the motion simply alleged that Middleton negligently and carelessly allowed his vehicle to run into and against Gary Whitson's motorcycle.

Section 523(a)(9) does not require a precise legal determination by a state court that liability was incurred as a result of the intoxicated use of a motor vehicle. The bankruptcy court in *In re Pahule* held:

The section requires merely that a *bankruptcy court*, in determining discharge, find that "a judgment or consent" cause a debtor liability "as a result" of the debtor's intoxicated use of a motor vehicle. The Court finds that as a matter of law, a bankruptcy court can make this determination based on a generic civil judgment with a specific underlying claim for liability arising from the intoxicated use of a motor vehicle.

*Sickel v. Pahule (In re Pahule)*, 78 B.R. 210, 212 (E.D.Wis.1987) (emphasis in original), *aff'd*, 849 F.2d 1056 (7th Cir.1988). *Accord, Commercial Union Ins. Co. v. Christianson (In re Christianson)*, 65

B.R. 157, 159 (Bankr.W.D.Mo.1986). Accordingly, the debtor's strict interpretation of Section 523(a)(9) must be rejected.

The Court must next consider the standard of proof to which plaintiffs are held in proving debtor's intoxication. The burden of proof under Section 523(a) is a murky area of bankruptcy law where few clear rules, if any, have been developed. In fact, many courts fail to even address this issue just as it has not been addressed by the parties here.

A basic tenet of bankruptcy dischargeability litigation is that the burden of proof is on the party seeking to except a debt from discharge. *Williams v. Hart (In re Hart)*, 83 B.R. 840, 842 (Bankr.M.D.Ga. 1987). Yet bankruptcy decisions are in conflict as to the amount of proof required.

A majority of decisions have held that most of the subsections of Section 523(a) must be proven by clear and convincing evidence. *Knoxville Teachers Credit Union v. Parkey*, 790 F.2d 490, 491 (6th Cir. 1986) (Those seeking exception to discharge under Section 523(a)(2) have the burden of proof on this issue by clear and convincing evidence.); *Driggs v. Black (In re Black)*, 787 F.2d 503, 506 (10th Cir.1986) (The burden of proof for Section 523(a)(2) cases is clear and convincing evidence.); *Great American Ins. Co. v. Storms (In re Storms)*, 28 B.R. 761, 765 (Bankr.E.D.N.C. 1983) (Embezzlement under Section 523(a)(4) must be proven by clear and convincing evidence.); *Clark v. Taylor (In re Taylor)*, 58 B.R. 849, 855 (Bankr.E.D.Va. 1986) (Embezzlement under Section 523(a)(4) must be proven by clear and convincing evidence.); *Taylor v. Kaufmann (In re Kaufmann)*, 57 B.R. 644, 646 (Bankr.E.D.Wisc.1986) (Under § 523(a)(2)(A) and (a)(6), the standard of proof is clear and convincing evidence.); *American Honda Finance Corp. v. Loder*, 77 B.R. 213, 215 (N.D.Iowa 1987) (Those seeking exception to discharge under Section 523(a)(6) have the burden of proof on the issue by clear and convincing evidence.); *First Valley Bank v. Ramonat (In re Ramonat)*, 82 B.R. 714, 720 (Bankr. E.D.Pa.1988) (Embezzlement under Section

523(a)(4) must be proven by clear and convincing evidence.).

Other courts have applied the preponderance of evidence standard to some of the subparts of Section 523(a). *Mammoth Cave Production Credit Ass'n v. Boren (In re Boren)*, 47 B.R. 293, 295 n. 8 (Bankr. W.D.Ky.1985) (Party seeking to except from discharge of a debt under Section 523(a)(6) bears the burden of proof by a fair preponderance of the evidence.); *Ross v. Carney (In re Carney)*, 68 B.R. 655, 657 (Bankr.D.N.H.1986) (Burden of proof under Section 523(a)(9) is by a preponderance of the evidence.); *Stern v. Dubian (In re Dubian)*, 77 B.R. 332, 339 (Bankr.D.Mass. 1987) (The court declined to adopt a clear and convincing standard for Section 523(a)(6).).

The split of authority on burden of proof has carried over into 523(a)(9) cases and is illustrated in a variety of decisions. Bankruptcy Judge James E. Yacos in *In re Carney* rejected the clear and convincing standard put forward in *Beneficial Consumer Discount Co. of Lancaster Pennsylvania v. Barrett (In re Barrett)*, 2 B.R. 296 (Bankr. E.D. Penn.1980). Judge Yacos concluded that the clear and convincing standard was limited to "dischargeability questions involving a fraud element" and therefore applied the preponderance standard to determine whether the debtor was intoxicated at the time of the accident. *In re Carney*, 68 B.R. at 657.

In contrast, two recent bankruptcy court cases support the requirement for clear and convincing evidence in Section 523(a)(9) cases. *State Farm Mutual Automobile Insurance Co. v. Wright (In re Wright)*, 66 B.R. 403 (Bankr.S.D.Ind.1986); *Commercial Union Ins. Co. v. Christianson (In re Christianson)*, 65 B.R. 157 (Bankr.W.D. Mo.1986) (Court required "substantial" evidence of intoxication.)

A recent opinion of the Court of Appeals for the Fourth Circuit in *Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988), suggests that the appropriate standard of proof to be applied in this Circuit under Section 523(a) is by preponderance of evidence. *Combs* specifically held that credi-

tors are required to prove by a preponderance of the evidence the willfulness and maliciousness of the debtor's acts under Section 523(a)(6). *Id.* at 116. Yet, it would appear that *Combs* is not limited in its focus upon Section 523(a)(6). The Fourth Circuit wrote:

> The Bankruptcy Code is silent as to the standard of proof necessary to establish the exceptions to discharge in § 523. In the face of this silence, courts may not imply a higher standard than the preponderance standard normally applied in civil proceedings.

*Id.*

In *Combs* the court refers to Section 523 generally as well as to Section 523(a)(6) specifically. The court notes that lower courts are divided upon the question of appropriate burden of proof and then cites six cases. The cases cited are not only willful and malicious conduct cases under Section 523(a)(6) but also fraud and embezzlement cases under Section 523(a)(2) and (a)(4).[1] Therefore, because of the consistent reference to Section 523 generally and because the cases cited to demonstrate the division of the lower courts, *Combs* can be interpreted as standing for the proposition that in the Fourth Circuit, the proper burden of proof under Section 523 is by a preponderance of the evidence. *See also, Rowe v. Showalter (In re Showalter)*, 86 B.R. 877, 880 (Bankr.W.D.Va.1988), *Kleiner v. Daboul (In re Daboul)*, 85 B.R. 197, 200, 17 B.C.D. 660, 662 (Bankr.D.Mass. 1988).

Finally, Bankruptcy Judge Arthur J. Spector's recent detailed opinion in *Borg–Warner Acceptance Corp. v. Watkins (In re Watkins)*, 90 B.R. 848 (Bankr.E.D.Mich. 1988), should be highlighted. Noting the split of authority as to the appropriate standard of proof, Judge Spector observed that no opinion has thoroughly analyzed the issue of the proper standard of proof under Section 523(a). Therefore, the court filled the void by providing an exhaustive study of the purpose of burdens of proof in our judicial system and considering bankruptcy law within this framework. Although *In re Watkins* involved a discharge action under Code Section 523(a)(6), the analysis of this opinion is helpful here.

Judge Spector notes that standards of proof represent an attempt to instruct the factfinder on the degree of confidence our society requires in the correctness of factual conclusions for a particular type of adjudication. Since the factfinder may sometimes be wrong, standards of proof help to distribute risks. *Id.* at 853. The court explains:

> There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt.

*Id.* at 854 (quoting *Speiser v. Randall*, 357 U.S. 513, 525–26, 78 S.Ct. 1332, 1341–42, 2 L.Ed.2d 1460 (1958)).

According to Judge Spector, the preponderance standard is used when both parties share risks equally. In a typical civil case involving a monetary dispute between private parties, society has minimum concerns with the outcome; thus, the burden of proof is by a mere preponderance of the

---

1. *Mammoth Cave Production Credit Ass'n v. Boren (In re Boren)*, 47 B.R. 293 (Bankr.W.D.Ky. 1985) (The burden of proof under Section 523(a)(6) is by a fair preponderance of the evidence.); *Bottari v. Baiata (In re Baiata)*, 12 B.R. 813 (Bankr.E.D.N.Y.1981) (The plaintiff seeks to have the debts owed to her declared nondischargeable under Sections 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6); court concludes that the correct standard of proof in § 523 dischargeability proceedings is a fair preponderance of the evidence.); *Morehead v. Peoni (In re Peoni)*, 67 B.R. 288 (Bankr.S.D.Ind.1986) (Under Section 523(a)(6) burden of proof is clear and convincing.); *Shafer v. Wintrow (In re Wintrow)*, 57 B.R. 695 (Bankr.S.D.Ohio 1986) (Law governing exceptions to discharge under §§ 523(a)(2)(A) and 523(a)(6) is to be narrowly construed against the exception.); *McGovern v. Capparelli (In re Capparelli)*, 33 B.R. 360 (Bankr. S.D.N.Y.1983) (In a § 523(a)(6) case the court concluded that the creditor must establish the elements by clear and convincing proof.).

evidence. Both parties share in the risk of error. *Id.* at 855. The court also notes in most other civil actions involving mere economic interests courts likewise use nothing higher than a preponderance standard. Bankruptcy legislation and discharge is more of an economic right rather than a right of liberty; therefore, Judge Spector concludes:

> The value of a discharge in bankruptcy, then, is not so great as to justify placing a higher burden upon a plaintiff in a § 523 adversary proceeding. If a debtor is denied discharge as to a particular debt, he merely remains subject to the same risks and burdens of any other debtor outside of bankruptcy. The debtor and his creditor having nothing to lose but the possibility of having to pay, or of being able to collect, money should the factfinder err. Thus, there is no sound reason to require a heightened burden of proof.

*Id.* at 856. This Court finds Judge Spector's reasoning persuasive in the Section 523(a)(9) case here.

Accordingly, the Court finds the plaintiffs must show by a preponderance of the evidence that the defendant was legally intoxicated under the laws of Virginia at the time of the accident.

In Section 523(a)(9) Congress could not refer to the legal terms used by each state to define legal intoxication; therefore, "congress chose the term 'legally intoxicated' and then referred to each state's laws for a definition of that term." *Dougherty v. Brackett, (In re Dougherty),* 51 B.R. 987, 989 (Bankr.D.Colo.1985).

In Virginia two sections of the Virginia Code define legal intoxication. The Virginia Code makes provisions for driving under the influence of alcohol in Va.Code § 18.2–266:

> It shall be unlawful for any person to drive or operate any motor vehicle, engine or train (i) while such person has a blood alcohol concentration of 0.10 percent or more by weight by volume as indicated by a chemical test administered in accordance with the provisions of § 18.2–268, (ii) while such person is under the influence of alcohol, (iii) while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely, or (iv) while such person is under the combined influence of alcohol and any drug or drugs to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely. For the purposes of this section, the term "motor vehicle" shall include mopeds, while operated on the public highways of this Commonwealth.

Additionally Va.Code § 4–2, in a chapter concerning intoxicating beverages, defines intoxicated as:

> Any person who has drunk enough alcoholic beverages to so affect his manner, disposition, speech, muscular movement, general appearance or behavior, as to be apparent to observation, shall be deemed to be intoxicated.

The parties here do not agree on what the Virginia Code requires to prove legal intoxication. Defendant's attorney at first suggested that a blood alcohol test or breathalyzer is needed to prove legal intoxication in Virginia. Later in the trial he seemed to back way from this proposition and instead argued that all the evidence produced by the plaintiff did not prove his client was intoxicated at the time of the accident. On the other hand, plaintiffs' attorney asserted that Va.Code § 4–2 should be relied on to determine a person's intoxication. He argued that a court is not limited to using only a blood alcohol test to determine if a person is intoxicated and contended that other facts, observations and evidence could be considered in making this determination.

Plaintiffs' reasoning is more in line with the interpretation of the Virginia Code drunk driving laws by the Supreme Court of Virginia. Va.Code § 18.2–266 provides four separate infractions for driving under the influence of alcohol or drugs. Code § 18.2–266(ii) makes it unlawful for a per-

son to drive or operate a motor vehicle while under the influence of alcohol; it is a general prohibition against driving while under the influence of alcohol but contains nothing about a person's blood alcohol level.

The Virginia Supreme Court has equated "under the influence of alcohol" with "intoxicated" as defined in Va.Code § 4–2. *Brooks v. City of Newport News,* 224 Va. 311, 316, 295 S.E.2d 801, 804 (1982). *Clemmer v. Commonwealth,* 208 Va. 661, 664, 159 S.E.2d 664, 666 (1968). *Gardner v. Commonwealth,* 195 Va. 945, 954, 81 S.E.2d 614, 619 (1954). While a blood alcohol test is one way to prove a person was driving while intoxicated, it is not the only way. *U.S. v. Gholson,* 319 F.Supp. 499, 502–03 (E.D.Va.1970).

It is clear from the Virginia statutes and cases that evidence of the blood alcohol content of a driver is not the only method available to prove that a driver operated a vehicle while under the influence of alcohol. A person's guilt or innocence is determined by all the evidence in a case.

For instance, Va.Code § 18.2–268(O) provides that regardless of the results of blood or breath tests, in a trial for violation of Va.Code § 18.2–266 all relevant evidence of the condition of the accused shall not be limited from introduction at trial and shall be considered by the court. Also, in Va. Code § 18.2–268(X) it is provided that:

> [t]he court or the jury trying the case shall determine the innocence or the guilt of the defendant from all the evidence concerning his condition at the time of the alleged offense.

2. Va.Code § 18.2–269 provides:
   In any prosecution for a violation of § 18.2–266(ii), or any similar ordinance of any county, city or town, the amount of alcohol in the blood of the accused at the time of the alleged offense as indicated by a chemical analysis of a sample of the accused's blood or breath to determine the alcoholic content of his blood in accordance with the provisions of § 18.2–268 shall give rise to the following rebuttable presumptions:

   (1) If there was at that time 0.05 percent or less by weight by volume of alcohol in the accused's blood, it shall be presumed that the accused was not under the influence of alcoholic intoxicants;

Recently, the Virginia Supreme Court held that where a blood alcohol analysis certificate is inadmissible, a person's guilt or innocence must be determined from other evidence of his condition. *Overbee v. Commonwealth,* 227 Va. 238, 243–44, 315 S.E.2d 242, 244–45 (1984). If a blood or breath test determining an accused's blood alcohol content is available in prosecution of a Va.Code § 18.2–266(ii) case, it merely gives rise to a rebuttable presumption.[2]

Applying the Virginia law, this Court concludes that Middleton was legally intoxicated at the time of the accident, notwithstanding the absence of blood or breath tests. The state trooper at the accident scene observed that Middleton was unsteady while he was standing, and his feet were spread wide apart. He noted that Middleton's eyes were extremely bloodshot and glassy, his clothes were disheveled, his speech was slow, cautious and slurred, and there was an extremely strong odor of alcohol about his person. The trooper's report prepared on the day of the accident indicated the Middleton was "drinking—obviously drunk".

The debtor did not deny having drunk beer. In fact at trial he testified to drinking two beers, and both Trooper Copley and the hospital report said Middleton admitted to having three beers. Considered with the time during which Middleton acknowledged he was drinking with his coworkers, his admissions could lead to the conclusion that he had even more beer on the night of the accident. Middleton also said he fell asleep at the wheel.

(2) If there was at that time in excess of 0.05 percent but less than 0.10 percent by weight by volume of alcohol in the accused's blood, such facts shall not give rise to any presumption that the accused was or was not under the influence of alcoholic intoxicants, but such facts may be considered with other competent evidence in determining the guilt or innocence of the accused;

(3) If there was at that time 0.10 percent or more by weight by volume of alcohol in the accused's blood, it shall be presumed that the accused was under the influence of alcoholic intoxicants.

There is some evidence to support Middleton's contention that he was not intoxicated at the time of the accident. He did suffer a head injury which may have contributed to his unsteady, glassy eyed look, and his disheveled appearance could be attributed to his involvement in the accident. There is no clear explanation in the record of why the state charged debtor only with reckless driving and not with driving while intoxicated.

In concluding that debtor was legally intoxicated, the Court relies heavily upon State Trooper Copley's testimony and upon his twelve years of experience as a state police officer. While debtor tried to show that his head injury caused his appearance and demeanor, neither his testimony nor the hospital report were overly convincing.

This Court holds that by a preponderance of the evidence the defendant was intoxicated under Virginia law. Since the plaintiffs have presented evidence to satisfy the nondischargeability requirements of Section 523(a)(9), this Court finds that the debt evidenced by the City of Norfolk Circuit Court judgment is declared excepted from discharge under 11 U.S.C. § 523(a)(9) and § 727.

IT IS SO ORDERED.